**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| RAKMOTH ULLAH,<br>16493 Steerage Circle<br>Woodbridge, VA 22191 | )<br>)<br>)<br>)<br>) Civil Action No. 1:20-CV-634<br>)<br>) |
| Rocky Ullah Services, LLC<br>16493 Steerage Circle<br>Woodbridge, VA 22191 | )<br>) **JURY TRIAL DEMANDED**<br>) |
| Plaintiffs | )<br>) |
| v. | )<br>) |
| ROBERT A. LINKENAUGER<br>2176 Ammen Road<br>Fincastle, VA 24090 | )<br>)<br>)<br>) |
| And | )<br>) |
| I LOVE BASKETBALL, LLC<br>Serve:  Registered Agent<br>        Douglass S. Wilson<br>        4725 Garst Mill Rd, Ste 3,<br>        Roanoke, VA, 24018 | )<br>)<br>)<br>)<br>)<br>) |
| And | )<br>) |
| MICAH FRAIM<br>6010 Ponderosa Circle<br>Roanoke, Virginia 24018. | )<br>)<br>)<br>) |
| And | )<br>) |
| AMBER WILKERSON<br>2077 Brughs Mill Road<br>Fincastle, VA | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**AMENDED COMPLAINT**

Rakmoth "Rocky" Ullah (hereinafter "Plaintiff" or "Rocky"), and Rocky Ullah Services, LLC ("RUS LLC"), by and through their undersigned counsel, hereby files this Amended Complaint against defendants Robert A. Linkenauger ("Adam"), I Love Basketball LLC ("ILB LLC"), Micah Fraim ("Micah"), and Amber Wilkerson ("Amber"), (hereinafter collectively as "Defendants") and allege as follows:

**PARTIES**

1.      Rocky is a natural person domiciled in Virginia and residing at 16493 Steerage Circle, Woodbridge, Virginia 22191.

2.      RUS, LLC is a limited liability company that was registered in the Commonwealth of Virginia on January 4, 2016.  Rocky is the sole member of RUS, LLC.

3.      Rocky established RUS LLC to receive his payments, and to act with and on behalf of him with respect to the Basketball Partnership described herein. Therefore, all references to Rocky in relation to the Basketball Partnership on or after January 4, 2016, should be construed to refer to Rocky *and* RUS LLC.

4.      Adam is a natural person who resides in the Commonwealth of Virginia.

5.      ILB LLC is a limited liability company that was first registered in Florida in 2013, dissolved in 2014 without the consent of all of its members, and then registered in the Commonwealth of Virginia on September 2, 2016.  Its registered place of business is at 2176 Ammen Road, Fincastle, Virginia 24090.

6.      Adam formed ILB LLC to receive his payments, and to act with and on behalf of him with respect to the Basketball Partnership as described herein.   Therefore, all references to

Adam in relation to the Basketball Partnership on or after September 2, 2016 should be construed to refer to Adam *and* ILB LLC.

7.      Micah is a natural person who resides in the Commonwealth of Virginia.

8.      Amber is a natural person who resides in the Commonwealth of Virginia.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over the copyright infringement claims, federal false designation of origin and federal unfair competition, and Stored Communications Act claims pursuant to 28 U.S.C. § 1331 and § 1338(a) because the claims arise under the federal copyright and trademark laws and federal statute.

10.     This Court has supplemental jurisdiction over the state and/or common law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise out of the same nucleus of operative fact.

11.     Venue within the Eastern District of Virginia is proper pursuant to 28 U.S.C. § 1391(b)(1) because Rocky resides in this district.

12.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district.

13.     The videos at issue in this dispute were created, filmed, and edited in this judicial district.

14.     The disputed website, www.ilovebasketballtraining.com (the "ILB Website"), is available and accessible in this judicial district.

15.     The YouTube Channel, www.youtube.com/ilovebasketballtv ("ILB TV"), is available and accessible in this judicial district.

16.     Products bearing Rocky's name and likeness are distributed within this judicial district.

## FACTS

### Rocky Meets Adam and They Begin to Work Together

17.     Rocky Ullah, also known as "Coach Rock" or "Coach Rocky," is a former collegiate basketball player.  He has become YouTube's leading basketball trainer and is one of the most popular and viewed basketball trainers in the world. He created, produced, and/or was featured in at least 650 videos of the over 700 videos currently on the ILB TV YouTube channel and is the primary reason I Love Basketball TV has over 2 million subscribers.

18.     Rocky has been invited by YouTube to be a primary speaker at their YouTube Creator Day in Washington, DC (2015 & 2017) and was also invited by YouTube and served as a Mentor for YouTube's NextUp creators in Los Angeles (2018).

19.     Rocky's basketball training videos have garnered over 100 million views from basketball players, trainers and coaches all over the world. He has over 378,000 followers on Facebook and over 100,000 followers on Instagram. Rocky has been featured on or worked with companies such as Nike, Wilson, FIBA, and has trained top level high school, NCAA Division One, Overseas Professional, and NBA players.

20.     Rocky and Adam first met in summer 2012 when Adam was a vertical jump trainer and Rocky, then a senior in college, was an assistant high school basketball coach and trainer.

21.     Rocky had signed up for a 2-day vertical jump training camp that Adam held in Roanoke, Virginia.  Adam helped Rocky with his vertical jump.  Rocky helped Adam with his

basketball skills.  The two became close friends.  In 2013, Rocky returned as a coach at Adam's camp.

22.     In early 2013, Adam and Rocky began to work together on various basketball-related projects.

## Adam Meets Marko Habjan and forms ILB LLC

23.     Before Adam and Rocky met, Adam became interested in a Facebook page that is now designated as www.facebook.com/iheartbbl (the "I Love Basketball Facebook Page"). Adam messaged the owner of the page, Marko Habjan, a young man in Italy who had garnered approximately 50,000 to 100,000 followers for the page at the time, which featured basketball highlights, news and tips.

24.     Adam offered to pay Marko $20 per post to post Adam's basketball-related material to Marko's Facebook page, for the purpose of generating traffic and therefore business to his own website which sold vertical jump training programs.  Marko agreed.

25.     In around 2013, Adam proposed that he and Marko become equal members of an LLC, I Love Basketball, LLC, ("ILB LLC") a Florida company, (Exhibit 1, Articles of Organization of ILB LLC) and share the revenue on a 50/50 basis from Adam's sales that were generated by leads from the I Love Basketball Facebook Page, as well as from sales of products and clothes from a new website, www.courtdomination.com.  Again, Marko agreed.

26.     Unbeknownst to Marko, in 2014 Adam dissolved, or caused to be dissolved, ILB LLC.  Adam never consulted with Marko or informed Marko before this happened.  Then, in 2016, Adam reconstituted ILB, LLC as a Virginia LLC, without informing Marko and making himself the sole member.  Adam has never shared the proceeds or revenues of the reconstituted

ILB, LLC with Marko.  Throughout this time and until recently, Marko continued to believe he was a member/manager and 50% partner in I Love Basketball LLC.

27.     When Marko learned that the entity of which he was a member had been unilaterally dissolved by Adam, he confronted Adam.  Adam emphasized that "any communication must stay between us" and then denied that ILB LLC was ever organized as an actual LLC.  This was a lie.

28.     An excerpt of this conversation among Adam, Marko, and Amber is below:



**Marko, Rocky and Adam Form a 33/33/33% Venture for ILB TV**

29.     In early 2013, about the same time that Marko and Adam formed ILB LLC, Marko told Adam that he also had a YouTube channel with approximately 1,000 subscribers, I Love Basketball TV ("ILB TV").

30.    Adam proposed to Marko that he give Adam and Rocky access to ILB TV so that they could make some money together by having Rocky develop the channel with basketball videos, tutorials, and training tips.  Marko agreed to Adam's proposal.

31.    Adam, Rocky and Marko further agreed that they would share the revenues from ILB TV on a 33/33/33 percentage basis.

32.    The communication in which Marko first provided the username and password to Adam is attached as Exhibit 2.  Marko never agreed to relinquish ownership and control of ILB TV to Adam, but rather provided access to ILB TV so that it could be used in furtherance of their agreement.

33.    Thereafter, beginning in or around April 2013, Rocky would prepare, create, film, star in, edit, and upload his own basketball training videos to ILB TV.  Adam had no role in the creation of the videos and did not actively manage the ILB TV channel.  Only on rare occasions would Adam participate as a vertical jump trainer in the ILB TV videos.

34.    At the time, ILB TV was monetized through an agreement that Marko previously had arranged with Fullscreen, a third party contractor that works with YouTube to collect ad revenues and take a percentage.

35.    Revenues from ILB TV were first received by Adam, who would then distribute to Rocky and Marko respectively, their 33% share.  Because Marko had established the monetization arrangement with Fullscreen, he could keep track of the revenues and distributions.

36.    Despite that Adam and ILB LLC have asserted that they own ILB TV, Marko never conveyed or assigned his rights in ILB TV to anyone until September 29, 2020, when he assigned them to Rocky.

**Rocky and Adam Enter Into the Basketball Partnership**

37.   In August 2013, Rocky began selling a suite of basketball training videos that he developed, created, produced, and starred in.  (Hereinafter collectively referred to as "Rocky's Basketball Products."). The first of those video packages was "Can't Be Guarded," a program focused on scoring.  It featured more than 30 training and tutorial videos, as well as written content and assignments. These products were sold from Rocky's website, www.cantbeguarded.com, and were electronically accessible by the purchaser.

38.   Rocky's Basketball Products presently include "Can't Be Guarded", "Guard Focused Training," "Plyovertical", "Game Time Handles," and "Perfect Player Protocol." Perfect Player Protocol is a compilation of the three other suites.

39.   Adam was interested in selling Rocky's Basketball Products on his vertical jump training website(s).  Therefore, Rocky and Adam entered into an arrangement whereby the revenues, net expenses, from sales of Rocky's Basketball Products on both Rocky's website and Adam's website(s) would be shared equally, i.e., 50/50%.

40.   From that point forward, Adam would consistently and uniformly refer to Rocky as his business partner, and this business arrangement shall hereinafter be referred to as the "Basketball Partnership."  (See, e.g., Exhibit 3, emails showing Adam referring to Rocky as his partner).

41.   By way of further example, in an interview that appears at https://youtu.be/vr8MqoXGj8w  (at approximately 6:25 in the video), Adam states, "So I partnered with Rock, who y'all know from I Love Basketball, and we built I Love Basketball, and grew it in about a 6 year time frame, along with our other Partner Marko. He handled the Facebook side, we handled the YouTube side and we just started growing it."

42.     On another occasion, in a podcast interview[1], Adam stated about Rocky and their partnership:

> "To this day, the most loyal person in the world…he worked circles around me..from a marketing standpoint, incredible….even to this day, [] he is now a partner in the business of course, I treat him, not only in this business, any business that I am a part of, he is a partner in, because of how much value he brings to anything that we do.  Obviously I could talk all day about, about Rock and what he's done.  An incredible, incredible guy, and a lot of the marketing stuff, and a lot of the, the genius behind I Love Basketball, that's not me, I'm just sittin' back watching.  That's him doing what he does in full control of that channel."

43.     Up until around May 2014, Rocky's Basketball Product sales from cantbeguarded.com were being sent directly to Rocky's Clickbank account.  Rocky would then distribute to Adam, Adam's share of the Basketball Partnership revenue, net of expenses, pursuant to their 50/50 agreement.

## Adam and Rocky Combine Basketball Partnership Revenues Into One Account and Modify Their Profit Sharing Agreement

44.     In or around May 2014, sales of Rocky's Basketball Products were going so well that Adam and Rocky were having to constantly keep track of who was selling what products and how much to distribute to the other.  To avoid this problem, Adam suggested pooling their Basketball Partnership revenues into a single dedicated account with BB&T which Adam previously had established for the deposit of his own product sales revenues as well as revenues from ILB TV.  (Hereinafter, the "First BB&T Account").

45.     Per Adam's suggestion, Rocky changed the payment instructions for Rocky's Basketball Product sales on www.cantbeguarded.com to be directed to the First BB&T Account.

---

[1] Available at:  https://anchor.fm/basketballtobusiness/episodes/B2B-026---Adam-Linkenauger---Founder-Of-I-Love-Basketball-Talks-Growing-A-7-Figure-and-1-Billion-View-Online-Basketball-Training-Business-e26qnj

46.     Adam also suggested a modification to their 50/50 profit sharing agreement from the sales of Rocky's basketball products.  Adam represented to Rocky that he was making hundreds of thousands of dollars from his vertical jumping product ("Adam's Vertical Jump Products") sales, and he proposed sharing all of their combined product sales (Rocky's Basketball Products and Adam's Vertical Jump Products") on the basis of 33% to Rocky and 66% to Adam, on a net basis, post-expenses.  Their 33/33/33% revenue sharing with Marko for ILB TV would remain the same.

47.     The expenses that would be deducted from revenues included website hosting, email marketing software, domain name expenses, website creation platforms, membership service software, website design, advertisements and marketing, basketball court rentals, and contractors for camera work, basketball trainers, customer support and social media.

48.      Based upon Adam's representations as to the revenue from sales of his vertical jumping product, Rocky agreed.

49.     On many months, Rocky and Adam also agreed to permit 20% of their post-expense monthly distributions remain in the Basketball Partnership as capital contributions to facilitate cash flow for the partnership.  As of January 2020, Rocky's capital contribution had accrued to approximately $30,000.   Examples of communications between Adam and Rocky discussing capital contributions are attached as Exhibit 4.

50.     A sample monthly balance sheets showing how monthly revenue for the Basketball Partnership, (including revenues from ILB TV and the ILB Website), expenses, and profits were accounted for, is attached as Exhibit 5.

51.     The balance sheets, evidencing distributions of net profits to Rocky and Adam and capital contributions by both men, illustrate that Rocky and Adam were partners in ILB TV and the ILB Website.

52.     Adam introduced Rocky to his accountant, Micah Fraim, and suggested that Rocky use Micah as his accountant, as well.   Micah prepared Adam's personal taxes, the taxes for ILB LLC, and later, taxes for Rocky, RUS LLC, and Authority Online.

53.     In 2014, as the ILB TV channel grew in followers and in popularity, Rocky began to utilize Jamie Garza ("Garza") as his cameraman.  Garza filmed and edited nearly all of Rocky's videos from that point forward.  Garza was paid as a contractor and edited the videos he filmed from his home.  Any rights, including copyrights, that Garza may have had in the Rocky Videos as a result of his work, were assigned to Rocky.

54.     ILB TV quickly garnered thousands of new followers and by 2015, was making from $3,000 to $5,000 per month in monetization revenues.

55.     Combined product sales of the Basketball Partnership grossed roughly $367,256 in 2015; $437,161 in 2016; over $320,000 in 2017; over $ 400,000 in 2018, and over $330,000 in 2019.  Rocky does not know sale numbers for 2020 because Adam has cut him out of the Basketball Partnership.

**ILB TV Changed its Monetization Contract to Whistle Sports and the Split of ILB TV Revenues Is Modified**

56.     In 2015, Adam, Rocky and Marko agreed to move ILB TV's monetization contract from Fullscreen to Whistle Sports because of a more favorable commission arrangement with Whistle.

57.     Adam suggested to Marko that they should modify their 33/33/33 relationship for ILB TV whereby Adam would instead pay Marko $1,600 a month; that way, Adam explained,

Marko would not have to weather the "down" months when his 33% share would be less than $1,600.  Marko agreed.  This arrangement continued until 2019, at which point Marko's share increased by several hundred dollars.  Throughout this time and until around 2018, Marko, believing he was still a member of ILB LLC, and pursuant to the ILB Agreement, would continue to receive 50% of any brand deals from I Love Basketball Facebook Page promotions.

58.     Adam then proposed to Rocky sharing the ILB TV gross revenues 50/50%, explaining that Marko had agreed to move to a flat fee arrangement. Rocky agreed.

59.     There are hundreds of basketball training videos available on ILB TV.  The majority of these videos were created, directed, and scripted by Rocky (the "Rocky YouTube Videos").  (Exhibit 6, thumbnails for each video available on ILB TV.).  Rocky personally selected the locations for filming and reserved gyms in Northern Virginia to do so. All of the Rocky YouTube Videos feature Rocky's performance, name, likeness, and persona.  Adam had no involvement with the creation of the Rocky YouTube videos.

60.     In or around December 2018, Adam and Rocky moved the YouTube monetization contract from Whistle Sports to NBA Playmakers. Then, in or around October 2019, Adam and Rocky created their own AdSense account for the Basketball Partnership to receive the YouTube payments directly from YouTube/Google (no more middle-man). Through all of these times, ILB TV was making from $5,000 to $10,000 per month.

61.     By early 2020, ILB TV had over 2 million subscribers.

62.     From the time Marko provided Adam with the username and password to use the ILB TV channel, Rocky managed all aspects of the channel's operation until Adam seized control of the channel in January 2020.

**Rocky and Adam Purchase the ILB Website to Promote Rocky's Basketball Products**

63.     As ILB TV was taking off in 2015, the domain www.ilovebasketballtraining.com (the "ILB website") was purchased from GoDaddy.com with Basketball Partnership monies in the First BB&T Account.

64.     Rocky developed, created, designed and managed this website and all pages on it. Rocky also wrote nearly all of the content on all of the site's various pages.

65.     The ILB Website became the platform Rocky and Adam used to sell Rocky's Basketball Products and  Rocky's Basketball Products comprise almost all the videos available for sale on the ILB Website.  See Exhibit 7, for summaries of the products offered on the ILB Website.  From the inception of the ILB Website, Rocky and Adam shared the profits (revenue less expenses) from the sales of the videos on a 33/66% basis.  Capital contributions as described above continued from time to time as Rocky and Adam would agree to do so in any particular month.

66.     In January 2016, after Rocky formed RUS LLC, payments for Rocky's distributions were made to RUS LLC directly.

67.     Garza recorded and edited these videos.  As with ILB TV, Garza was paid as a contractor, and he assigned any rights he may have had, including copyrights, in Rocky's Basketball Products, to Rocky.

68.     Rocky's name and likeness are used to promote the sale of the videos on the ILB Website.  See, for example, an excerpt from the ILB Website, attached hereto as Exhibit 8.

69.     Rocky registered the copyright in his name as the sole claimant for the following Basketball Product videos:

*Plyovertical*, Registration No. PA 2,236,416, attached as Exhibit 9.

*Game Time Handles*, Registration No. PA 2,238,312 attached as Exhibit 10.

*Guard Focused Training System*, Registration No. PA 2,238,321, attached as Exhibit 11. These three works comprise the "Perfect Player Protocol" bundle.  Information concerning the "Perfect Player Protocol" bundle is attached as Exhibits 12 and 13.

70.     The "Perfect Player Protocol" bundle is the most popular option purchased from the ILB Website.

71.     *Plyovertical*, *Game Time Handles*, and *Guard Focused Training System* are Rocky's Basketball Products that are available for sale on the ILB Website.  See screenshot, www.ilovebasketballtraining.com/products, attached as Exhibit 7, as well as Exhibits 12 and 13.

72.     Rocky's name and image are used throughout the ILB Website and ILB TV.  *See, e.g.*, Exhibit 14  ("The Death of Traditional Basketball Training") and Exhibit 15 ("Meet Coach Rocky").  Rocky allowed the use of his name, likeness, and persona in association with both ILB TV and the ILB Website because he was involved with those businesses and receiving distributions as a partner of the Basketball Partnership from the revenues those sites generated.

**Adam Switches the Basketball Partnership Bank Accounts**

73.     In 2016, Adam suggested moving all Basketball Partnership monies from the First BB&T Account to a different BB&T account (hereinafter, the "Second BB&T Account"), titled in the name of I Love Basketball LLC.

74.     Adam told Rocky that I Love Basketball LLC was simply a name that Adam had registered as an LLC for personal liability purposes, and was separate from their Basketball Partnership.

75.     Adam suggested that Rocky form an LLC to hold his earnings as well and limit him from personal liability in their business endeavors.  On Adam's suggestion, Rocky formed

14

RUS LLC on January 4, 2016.  From that point on, Rocky's monies from the Basketball

Partnership were earnings of RUS LLC.

### Rocky and Adam Explore Other Ventures; Rocky Creates GetMoreViews

76.     In 2014, as ILB TV and the ILB Website grew in popularity, Rocky and Adam

began developing and sold digital courses geared toward teaching online businesses how to

grow their online businesses on YouTube (hereinafter, the "Get More Views Partnership").

These products were sold on a domain that they created, www.getmoreviews.com.  Rocky and

Adam shared expenses and net profits from sales 50/50%.

77.     Rocky wrote, designed, and created all of the pages on www.getmoreviews.com.

Garza, as a contractor, filmed the majority of the videos available for access purchase.

78.      In August 2017, Rocky conceived, wrote and published the "Money Map" for

www. getmoreviews.com/mm-page-1, and the "Money Map" article displayed Rocky's name.

Subsequently, Adam removed Rocky's name and he now claims credit as the author of the

Money Map.

### Rocky and Adam form Authority Online LLC; Adam and Micah
### Conspire to Use the Company Account For Self-Dealing

79.     In 2017, Rocky, Adam and Micah formed Authority Online, LLC, which was

initially funded online with $45,000 in proceeds from www.getmoreviews.com (a 50/50%

venture between Rocky and Adam).  Their respective percentages were 47.5, 47.5, and 5,

although Micah did not make any initial contribution.  Authority Online was conceived as a

consulting company to retain and advise clients on growing their business through YouTube.

Clients would hire Authority Online for YouTube strategy and business advice.  Based on

monies generated from following Authority Online's strategies, Authority Online would be paid

a percentage of those revenues. Alternatively, some clients paid monthly recurring payments of $3,000.

80.     Adam suggested that Authority Online should rent office space in Roanoke, where Adam and Micah lived.  Rocky agreed.  Adam stated that he found office space at 325 Mountain Avenue, and the landlord was Roanoke Business Hub, LLC ("RHB").  Neither Adam nor Micah never showed a copy of the lease to Rocky.

81.     Rent began at $700 for several months, and then increased to $1200.  However, payment amounts appeared to vary from time to time.  Unbeknownst to Rocky, Adam and Micah were the owners behind RHB, its sole members, and it appears that they caused RHB to purchase the building in April 2017 with the intent that Authority Online would be a tenant and pay rent to them as an expense.  (Exhibit 16, Article describing Micah and Adam as the owners of RHB[2]; Exhibit 17, stating that RHB owns 325 Mountain Ave.[3]).

82.     Authority Online paid the following amounts to RHB over three years:

| October 2017 | $700 |
| November 2017 | $700 |
| December 2017 | $700 |
| January 2018 | $700 |
| February 2018 | $1,250 |
| March 2018 | |
| April 2018 | $3,650 |
| May 2018 | |
| June 2018 | $2,575 |
| July 2018 | $1,200 |

---

[2] https://roanoke.com/business/two-retailers-to-be-displaced-by-new-grandin-village-business-hub/article_6fa7fc5e-d80d-57ac-93ef-670002bb0d1d.html

[3] https://roanoke.com/business/real-estate-transfers-for-april-23-2017/article_74f8eb2d-7346-5f81-b1e9-a30d7364d69d.html

| | |
|---|---|
| August 2018 | $1,200 |
| September 2018 | $1,250 |
| October 2018 | $1,150 |
| November 2018 | |
| December 2018 | $3,150 |
| January 2019 | $1,200 |
| February 2019 | $1,200 |
| March 2019 | $1,200 |
| April 2019 | $1,200 |
| May 2019 | $1,200 |
| June 2019 | $1,200 |
| July 2019 | |
| August 2019 | $2,400 |
| September 2019 | $1,200 |
| October 2019 | $700 |
| November 2019 | $725 |
| December 2019 | |
| February 2020 | $19,600 |
| TOTAL | $50,050 |

83.     Authority Online had four primary consulting clients on business commission sales agreements.  Adam worked on closing the clients and gave general marketing advice; Rocky focused on teaching the clients the fundamentals of YouTube marketing strategy, building websites, and email marketing.  Micah was the company accountant and assisted clients with their accounting.

84.     Authority Online's Operation Agreement allowed both Rocky and Adam to develop businesses and ventures that competed with one another or Authority Online, and both of them did so.  For example, in August 2019, Adam created a company, The Sport of Business,

which operated in the same line of business as Authority Online and to which Adam later transferred clients of Authority Online.

85.     Distributions were purportedly made to Rocky and Adam according to their percentages every month.  Micah often deferred taking his distributions.  However, Rocky was not paid all monies owed to him because Adam and Micah were wrongfully paying rent to themselves as RHB.

**Adam Attempts to Coerce Rocky to Transfer His Interest in Authority Online to Adam**

86.     On January 29, 2020, Adam called Rocky, claiming that one of their Authority Online clients, who had a business teaching Spanish, had threatened to sue the company because Rocky had formed a YouTube channel to teach Spanish.

87.     The client and Rocky communicated somewhat frequently, and the client never had expressed any concerns about Rocky's YouTube channel.  Moreover, Authority Online's engagement agreements with clients provides that there shall be "no duty of non-competition" during the term of the agreement.

88.     Nonetheless, Adam insisted to Rocky that they must dissolve the company immediately to avoid liability and that he was forwarding dissolution papers for Rocky to sign immediately.

89.     The papers Adam sent to Rocky were not to dissolve Authority Online, however. Instead, they were papers (the "Rocky Transfer Papers," Exhibit 18) to transfer Rocky's share and interest in Authority Online to Adam.  Accordingly, Rocky did not sign what Adam had sent.

**Adam Locks Out Rocky and Marko From Their Websites and Accounts, and Attempts to Falsify His Ownership of ILB TV**

90.     Later that night, Rocky was shocked to discover that he was locked out of all accounts related to the Basketball Partnership, including ILB TV, the ILB website, www.getmoreviews.com (all of which Rocky created from scratch), all bank accounts of the Basketball Partnership, all bank accounts of Authority Online and GetMoreViews, and of access to the websites of Authority Online clients, which Rocky helped build and had been managing.

91.     Two days prior, Adam had asked Rocky for all of the passwords to their social media accounts and bank accounts, claiming he was just trying to get organized and "get his life in order."  In fact, Adam had been planning to change all of the passwords and lock Rocky out.

92.     An excerpt of the chat conversation in which Adam asked Rocky for the passwords is below:

 **adamlinkenauger**  10:58 AM
Kobe is the only thing that kept me caring about bball

in college

and after

I was crying lol- I got family members who I likely won't shed a year when they pass

but I did for him

and that's not bc I'm cold.. that's just bc those family members didn't even take the time to get to know me/care about me lol

When will you be back?  I'm trying to get my life organized. Apparently my lack of organization causes me a lot of anxiety. duh

I'm getting all my websites and passwords and shit in place

but I won't know them all so will need your help haha

 **rocubball**  11:08 AM
haha cool which ones you need? I can do it soon as I get back

93.     Marko also discovered that he, too, was locked out of access to his ILB TV, the very channel that he had created and permitted Adam and Rocky to use.  Adam also locked Marko out of his Gmail account, ibasketball6@gmail.com, which was linked to ILB TV and which was used to log in to ILB TV.

94.     Marko confronted Amber and Adam, who admitted to locking Rocky out and asserted that they owned ILB TV.

95.     The following is a chat exchange amongst Amber, Adam and Marko around that time, in which Amber states that "[t]he password was change for protection against Rocky…":



96.     Amber persisted that Rocky was removed from ILB TV to "protect the account" from him.  The below is another excerpt of a chat with Marko:



97.   Adam appeared to be claiming that he assumed ownership of ILB TV because he

spent monies in relation to using it.

98.   The below are excerpts of conversation between Marko and Amber, and Marko

and Adam, in regards to Adam's claim that he unilaterally acquired ownership of ILB TV

without Marko's consent:





21

99.     In another chat, Marko asked Adam when he decided that his Gmail account—

referring to ibasketball6@gmail.com, which controls ILB TV—became Adam's property.

Adam admitted, "I never did." In the chat below, he insisted that he took control of the accounts

to prove to YouTube that Rocky was not entitled to access to ILB TV.



100.     On January 31, 2020, Adam emailed Rocky, threatening him with claims from

him (Adam) and the client.  Adam said they would release Rocky from liability if he signed the

Rocky Transfer Papers.  (Exhibit 19).  At least daily for the next month, Adam repeatedly sent

the Rocky Transfer Papers to Rocky.  Rocky continued to refuse to sign away his interest in

Authority Online.

101.    Not only did Adam lock out Rocky, Adam locked out Marko's access to ILB TV,

as well as a Gmail account that Marko owned and had permitted Adam to use,

ibasketball6@gmail.com.

102.    Adam also stated to Marko that he believed Rocky stole from him, and referred to

Rocky as a "Joint Partner," not an employee, intern, or independent contractor, and Amber

claimed Rocky quit.

103.    The below is an excerpt from that conversation amongst Marko, Amber and

Adam.



104.    Amber also wrote to Marko that, in regards to locking out Rocky, "Rock deserved

what he got.  I stand by that.  And it wasn't a quick decision."  (Exhibit 20).

105.    Then, Adam lied to Marko.  He told Marko that because Rocky had caused YouTube to suspend payments to ILB TV, Adam needed to provide documentation to YouTube to show who owns the account.  Accordingly, Adam told Marko that he needed to sign "the same document we did in 2013," referring to their ILB, LLC agreement.  (Exhibit 21, text message from Adam to Marko).

106.    The document that Adam forwarded to Marko, however, was not the same agreement that they had signed in 2013.

107.    Rather, it was a contract, backdated to March 2013, purporting to transfer Marko's rights in ILB TV, and his Gmail account associated with it, ibasketball6@gmail.com, to ILB, LLC.  (Proposed Contract, Exhibit 22; Screenshot of Docusign communication attaching contract, Exhibit 23).

108.    Marko refused to sign the document Adam had sent, and confronted Adam about sending him a "fake" agreement.  Adam explained he was doing it because he was "saving us."

109.    This conversation is evidenced from the following excerpt of a chat between them:



110.    To this date, neither Marko nor Rocky have regained access to ILB TV, nor to the Gmail account associated with it.

111.    In this case, Adam has falsely claimed that Marko assigned his rights in ILB TV in March 2013.  (Counterclaim [Dkt No. 19] ¶ 35).

112.    In fact, Marko assigned ILB TV to Rocky on September 29, 2020. (Exhibit 24.) Pursuant to the assignment, Marko assigns to Rocky any and all rights, title, and interests Marko has in and to ILB TV and Mark's Gmail Account, including all intellectual property rights and right of access to the ILB TV and the Gmail Account.  In addition, Marko assigned his claims for all right, title and interest in ILB TV and the Gmail Account.

### Adam Continues to Enrich Himself From the Basketball Partnership at the Expense of Rocky

113.    As a consequence of Adam's wrongful actions, Rocky is now unable to control the continued use of his own content, likeness, and name.

114.    Since Adam locked Rocky out in January 2020, Rocky has not received any Basketball Partnership distributions.  Adam has kept all revenues for himself.  This includes revenues for ILB TV, which contains 600+ videos created and starred in by Rocky, and the combined sales of Rocky's Basketball Products and Adam's Vertical Jump Products.  In addition, Adam sells Rocky's Basketball Products on https://training.ilbelite.com and collects those revenues.

115.    Adam has cut off Rocky's distributions and is solely profiting from products created by Rocky, and from Rocky's commercial image and likeness.

116.    Rocky's agreement with Adam for the use of his name and likeness in the videos on ILB TV and the ILB Website, and https://training.ilbelite.com, was explicitly conditioned upon the revenues that were generated being shared with him as a partner in the Basketball Partnership.

117.    Any implicit consent by Rocky to the use of his name, likeness, and persona in connection with all endeavors of the Basketball Partnership, including ILB TV, the ILB Website, and the sale of Rocky's Basketball Products, ended when Adam blocked Rocky out and denied Rocky access to the sites containing Rocky's content, likeness, and name, to products and pages he created, and to property of the Basketball Partnership.

118.    By at least April 2020, Rocky explicitly placed Adam on notice that Adam could no longer use Rocky's content, name, likeness, or persona.

119.    Despite this notice, and despite Adam knowing that Rocky withdrew his implicit consent when Adam cut him out of Basketball Partnership operations and distributions, Adam has continued to use Rocky's content, name, likeness, and persona, and Adam continues to enrich himself at the expense of Rocky's likeness, fame, commercial image, and hard work.

### Adam Has Wrongfully Withheld Distributions to Rocky from Authority
### Online and Wrongfully Terminated Him and Dissolved the LLC

120.    Since Adam locked Rocky out of Authority Online in January 2020, Rocky has not received distributions to which he is entitled from the company.

121.    In February 2020, counsel for Rocky sought to examine the books and records of Authority Online, counsel for Adam took the position that Rocky had been expelled from the company.

122.    Any termination or expulsion of Rocky was improper and illegal.

123.    The Authority Online Operating Agreement provides for expulsion of a member only where the member "has been in default for more than 12 consecutive months." Ex. 26, Operating Agreement, Section 6.11.  Adam has never taken the position that Rocky had been in "default" for 12 months prior to February 2020, nor, for that matter, is "default" defined in the document.

124.    Section 9 of the Operating Agreement sets forth mandatory procedures for addressing disputes among members.  Adam and Micah did not undertake these steps prior to taking the position that he had been expelled.

125.    Furthermore, under Section 7, even a disassociated member's financial interest shall not be terminated.  In spite of this provision, Authority Online has not made any distributions to Rocky since January 2020.

126.    Not only was Rocky's termination and expulsion improper and illegal, Adam and Micah improperly acted to dissolve the LLC.

127.    On February 12, 2020, Adam and Micah executed a Written Consent of the Members in Lieu of a Special Meeting, stating that the "non-breaching members" resolved to dissolve the Company, but not stating how Rocky was in breach.  (Exhibit 25)  Rocky was

issued a distribution check in the amount of $2,471, the acceptance of which Ms. Pierce conditioned upon "resolution of any and all remaining issues between the Members."  Rocky has not cashed the check.

128.    Despite claiming that the amount of $2,471 represented the remaining distribution to Rocky for his 47.5% interest, on that same day, Adam issued Micah Fraim a distribution check in the amount of $14,615.

129.    Amber, Adam's girlfriend, was a contractor for Authority Online, making $2750 per month.  In February 2020, Adam paid her $4125.

130.    Then, on February 14, 2020, Adam wrote a check for $19,600 to the "Roanoke Business Hub."  (Exhibit 26).  RHB as noted above, is the landlord for Authority Online and is owned by Adam and Micah.  Rocky was unaware of this throughout his time with Authority Online and his supposed partnership with Adam and Micah.

131.    The memo written by Adam on the check states, "Close Lease for Office," and according to counsel for Adam, the Landlord (Adam and Micah) had "declare[d] the entire balance of rent and additional rent for the remainder of the term as due and owing.  The Landlord has done so and the penalty for early termination has been paid by the Company." (Exhibit 27).

132.    Yet, even to this day, after the dissolution of Authority Online, and the company's payment of $19,600 to "close" the office, Adam and Micah continue to work out of 325 Mountain Avenue.

133.     Adam and Micah created the false pretext of a "early termination penalty" for Authority Online's Lease as a means to pay themselves an additional $19,600.

134.    On February 15 and March 11, 2020, Adam wrote checks on Authority Online's bank accounts in the amount of $6,327 and $4,500 to pay his attorney, effectively draining the Authority Online accounts, for his own personal benefit.  (Exhibit 28).

135.    On March 11, 2020, Adam caused a Certificate of Cancellation to be filed with the Virginia State Corporation Commission (SCC).  (Exhibit 29).

136.    In that Certificate, Adam falsely certified that "The limited liability company has completed the winding up of its affairs."

137.    Adam cancelled Authority Online without Rocky's consent.  Further, despite purportedly dissolving Authority Online, Adam disregarded the corporate requirements of the Operating Agreement and did not properly wind up its affairs and distributing the assets according to the Operating Agreement.

138.    Instead, in May 2020, two months after Authority Online was purportedly terminated with the State Corporation Commission, Adam wrote a check from Authority Online's bank account to pay an additional amount of $5,434.65 to his attorney, Suzanne Pierce. (Exhibit 30).

139.    Additionally, in June 2020, Adam, through his attorney, sought to collect a debt allegedly owed to Authority Online from a former client, Sarah Beth Yoga and directing payment to Adam's new company, the Sport of Business. (Exhibit 31).  This was three months after Authority Online had been terminated by the SCC.

140.    At a minimum, Adam and Micah deprived Rocky of 47.5% of the following monies: $50,050 paid in rent to RHB; $16,262 paid to attorney Suzanne Pierce; and $7,469 received from a client, Sarah Beth Yoga.

**Adam and Amber Lock Rocky Out of His Facebook Page**

141.    In 2015, Rocky created his own public figure Facebook page, which can be found at www.facebook.com/coachrocky1.  Rocky created this page himself, and never granted any rights or interests in it to anyone.  Since 2015, Rocky has garnered more than 300,000 followers to his page that includes basketball training videos and posts, and which promotes his commercial likeness.

142.    Rocky had provided Adam with administrative privileges to his Facebook page so that Adam could also post videos and market the Basketball Partnership brands through Rocky's page.

143.    Amber is Adam's live-in girlfriend.

144.    In September 2020, Rocky discovered he was no longer an administrator and had no access to his Facebook page.

145.    Through counsel, Rocky demanded that Adam restore Rocky's access to his own Facebook page.  Adam and ILB LLC, through counsel, took the position that ILB LLC owns the page and that that Amber locked the account because she believed it was being "hacked."

146.    However, Amber's correspondence to Marko during that time reveals an entirely different story.  In fact, Amber and Adam combined and conspired to lock Rocky out of his own page and cause him harm to his business and image, in part as retaliation for this lawsuit.  Amber wrote to Marko, appearing angry that Rocky had access to his Facebook page:



147.    Rocky initiated a dispute with Facebook over his right to the page, and Facebook did return control of the page to Rocky on or about September 25, 2020.

148.    For the legal claims that follow below, "Adam" shall be construed to mean Adam and ILB LLC (or "Adam/ILB") with respect to all conduct of Adam that occurred on or after September 2, 2016.

## COUNT I

### Breach of Partnership Agreement – Against Adam/ILB LLC

149.    Rocky and RUS LLC incorporate the preceding paragraphs as if set forth fully herein by reference.

150.    In or around August, 2013, Rocky and Adam agreed to jointly manage and operate a business for profit (the Basketball Partnership), which would sell basketball related videos and products, and that they would share in the expenses/liabilities and profits of the business.

151.    The actions of Rocky and Adam to jointly manage and operate a business for profit and jointly share the liabilities and profits created a Virginia partnership by operation of law.

152.    Rocky and Adam agreed that the Basketball Partnership business would be separate and distinct from other business endeavors in which they might otherwise individually engage.

153.    Rocky and Adam held themselves out to each other and to third parties as partners in the business operations encompassed within the Basketball Partnership.

154.    The initial terms of the partnership agreement were:

   a.    The combined interest of Adam and Rocky in the YouTube revenues (33% plus 33% of total revenue) from ILB TV would be treated as partnership monies, to be distributed 50/50 to each.  Rocky and Adam both had right of access to the channel.  Rocky agreed to allow his image and likeness to be displayed on the channel in exchange for compensation in the form of profits from the partnership;

b.   Rocky would manage and create videos for the ILB TV, and the partners agreed, along with Marko, that Rocky would be permitted access to it;

c.   Rocky granted the partnership a license to sell his Basketball Products.  The license was implicitly conditioned upon Rocky being compensated for the sale of his products;

d.   Adam would sell Rocky's Basketball Products from his website and Rocky would sell from his.  They would share profits (revenues less expenses) on a 50/50 basis, whether those products were sold from Adam or Rocky's website.

155.    Subsequently, Adam proposed and Rocky agreed to modify their agreement as follows:

a.   The partnership would acquire the ILB Website with partnership monies from the sales of videos, and both partners would be entitled to have access and control of the ILB Website;

b.   The ILB Website would be used to sell Rocky's Basketball Products and these would become partnership monies.  Rocky agreed to allow the partnership to use his image and likeness in exchange for compensation in the form of profits;

c.   Revenues from Adam's vertical jump training products would also be contributed as partnership monies;

d.   The partners would share profits (revenues less expenses) of **all** product sales, 33% to Rocky and 66% to Adam;

e.   The partners would, from time to time, mutually agree to defer 20% of their monthly distributions as capital contributions to the partnership.

f.   These above modifications occurred in or about May 2014.  In 2015, Adam proposed a further modification:  The combined interest of Adam and Rocky in YouTube

revenues, less the $1200 monthly payment to Marko, would be treated as partnership monies to be split 50/50.

156.    Because the parties never reduced their partnership agreement to writing, the operation of the Basketball Partnership is governed by the Virginia Uniform Partnership Act, Va. Code Ann. § 50-73.39 *et seq.*

157.    Adam breached the partnership agreement by excluding Rocky from the management and business affairs of the Basketball Partnership.

 a.   In late January, 2020, Adam locked Rocky out of all operations related to the Basketball Partnership, including ILB TV and the ILB website, and all bank accounts of the Basketball Partnership;

 b.   Since January, 2020, Adam has refused, despite demand by Rocky, to make any distributions of profits from the Basketball Partnership, which Rocky is entitled to receive per their partnership agreement. This includes profits from ILB TV, which contains 600+ videos created and starred in by Rocky, and sales of Rocky's Basketball Products on the ILB website and https://training.ilbelite.com;

 c.   Since January, 2020, Adam has continued to use Rocky's name, likeness, and persona on ILB TV, the ILB website, and https://training.ilbelite.com even though Rocky's consent to do so ended when Adam denied Rocky access to the sites containing Rocky's content, likeness, and name, to products and pages he created and to property of the Basketball Partnership, including the distribution of profits.

158.    As a result of Adam's breaches of the partnership agreement, Rocky and RUS have sustained significant damages, including lost distributions from revenues from ILB TV and sales of Rocky's Basketball Products and Adam's Vertical Jump Products, lost goodwill,

lost profits as a result of ILB TV not posting new Rocky videos, and other direct and consequential damages to the Basketball Partnership, including lost future profits.

159.     Rocky and RUS ask for entry of an award of the above-referenced damages in an amount to be determined at trial against Adam/ILB, as well as injunctive relief requiring Adam/ILB to restore joint access and control of ILB TV, the ILB Website, and all bank accounts holding monies of the Basketball Partnership, to Rocky.

## COUNT II

**Breach of Contract [In the Alternative to Count I] – Against Adam and ILB LLC**

160.     Rocky and RUS LLC incorporate the preceding paragraphs as if set forth fully herein.

161.     Should the Court decide that a partnership by operation of law not has not been formed between Rocky and Adam, alternatively, Rocky had an oral contract with Adam whereby they would jointly manage and operate a business as more fully set forth in the Amended Complaint and specifically in Paragraphs 154 and 155 above.

162.     Adam, by virtue of the conduct described in Paragraph 157 above, breached his oral contract with Rocky.

163.     As a result of Adam's breaches, Rocky has sustained significant damages, including lost revenues from ILB TV and sales of Rocky's Basketball Products and Adam's Vertical Jump Products, lost goodwill, lost profits as a result of ILB TV not posting new Rocky videos, and other direct and consequential damages to future profits as a result of Adam's breaches.

164.     Rocky and RUS ask for entry of an award of the above-referenced damages in an amount to be determined at trial against Adam/ILB, as well as injunctive relief requiring

Adam/ILB to restore joint access and control of ILB TV, the ILB Website, and all bank accounts holding monies of their joint earnings, to Rocky.

### COUNT III

### Breach of Fiduciary Duty – Against Adam and ILB LLC

165.    Rocky and RUS LLC incorporate the preceding paragraphs as if set forth fully herein.

166.    As partners in the Basketball Partnership, Adam owed partner Rocky a fiduciary duty of loyalty.

167.    In January, 2020, Adam breached his fiduciary duty of loyalty to his partner Rocky by excluding him from the management and business affairs of the Basketball Partnership's business and, thereafter, by assuming total control of the partnership's business and property.

168.    More specifically, Adam breached his fiduciary duty of loyalty to Rocky by not accounting to the partnership (and holding, as trustee for the partnership) for those profits derived from the partnership business since January, 2020 or from Adam's use of partnership property.  Instead, Adam has paid these partnership monies to himself.

169.    As a result of Adam's breaches of his fiduciary duty of loyalty to Rocky, Rocky has sustained significant damages, including partnership distributions resulting from ILB TV revenues and sales of Rocky's Basketball Products and Adam's Vertical Jump Products.

170.    Adam's breaches were willful and wanton, warranting an imposition of punitive damages.

171.     Rocky and RUS LLC ask for entry of an award of the above-referenced damages in an amount to be determined at trial against Adam/ILB, as well as an award of punitive damages in the amount of $350,000 for Adam/ILB's willful and malicious conduct.

## COUNT IV

### Dissociation of Adam/ILB from Partnership – Against Adam and ILB LLC

172.     Rocky and RUS LLC incorporate the preceding paragraphs as if set forth fully herein.

173.     Pursuant to Va. Code § 50-73.109, a partner may be expelled by judicial determination where the partner, *inter alia,* engages in wrongful conduct that adversely and materially affects the partnership business or willfully or persistently commits a material breach of the partnership agreement or of his statutory duties, including his fiduciary duties.

174.     Adam, by virtue of the conduct described herein, engaged in wrongful conduct that adversely and materially affected the partnership business.

175.     Adam, by virtue of the conduct described herein, willfully or persistently committed a material breach both of the partnership agreement as set forth in Count 1, above, and of his fiduciary duties owed to Rocky, as set forth in Count 3 above.

176.     For each of these reasons standing on their own, good cause exists for this Court to order Adam's expulsion from the Basketball Partnership pursuant to Va. Code § 50-73.109.

177.     Rocky and RUS LLC ask for entry of an Order expelling Adam/ILB  from the Basketball Partnership and ask for Rocky to be appointed the custodian to wind up its business.

**COUNT V**

**Breach of Authority Online LLC Operating Agreement – Against Adam and Micah**

178.    Rocky incorporates the preceding paragraphs as if set forth fully herein.

179.    Adam, Rocky and Micah executed the Authority Online Operating Agreement on September 7, 2017.  Material terms of that agreement included:

a.   Under Section 4.1 and Exhibit A of the Operating Agreement, Rocky was a 47.5% owner of Authority Online, LLC and, therefore, entitled to distributions of 47.5% of net profits;

b.   Under Section 7.13, members shall continue to share distributions during the dissolution proceedings;

c.   Under Section 7.14, the proceeds of liquidation of assets are to be distributed first to creditors, and then to Members in satisfaction of liabilities for distributions under Sections 13.1-1031 and 1033 of the Virginia Limited Liability Act, and then to Members and former Members in proportion to their respective contributions.  Any remainder is to be distributed to Members and former Members in proportion to their Membership interests.

180.    Adam and Micah breached their obligations under the Operating Agreement by:

a.   Failing to make distributions in accordance with Rocky's 47.5% ownership share, as required by Section 4.1;

b.   Failing to make distributions to Rocky during the dissolution proceedings, as required by Section 7.13;

c.   Failing to make appropriate distributions to Rocky of the proceeds from the liquidation of assets, as required by Section 7.14.

181.    Rocky has been damaged by Defendants' breaches of these provisions, in at a minimum the following amounts: 47.5% of $50,050 in monies wrongfully paid to Roanoke Business Hub; 47.5% of $16,262 wrongfully paid to Suzanne Pierce; and 47.5% of $ 7,469 received by Adam and/or Micah from Sarah Beth Yoga for amounts owed Authority Online, LLC.  Rocky seeks entry of an award of damages in the above-referenced amounts.

182.    As a result of Adam and Micah's conduct, Rocky further requests that this Court order an accounting of all business done and profits made by Adam and/or Micah as a result of the breach of their obligations under the Operating Agreement to make proper distributions, pursuant to Va. Code § 8.01-31 and the inherent and equitable powers of the Court.

**COUNT VI**
**Statutory Business Conspiracy—Va. Code § 18.2-499 – As to Authority Online, LLC –**

**Against all Defendants**

183.    Rocky incorporates the preceding paragraphs as if set forth fully herein.

184.    Adam, Micah, and/or Amber, by virtue of the conduct described herein, combined, associated, agreed, mutually undertook, and concerted together for the purpose of willfully and maliciously injuring Rocky in his reputation, trade, business, or profession.

185.    More specifically, in or about April, 2017, Adam and Micah, acting for their own personal economic benefit, conspired and combined to have Authority Online, LLC rent office space in a building they owned through Roanoke Business Hub, of which which they were the only two members.  By doing so, Adam and Micah were able to extract monies as a purported "business expense" from Authority Online, LLC for their own personal benefit.

186.    In or about February, 2020, Adam and Micah, again, for their own personal benefit, conspired and combined to have Authority Online, LLC write a check for $19,600 to their LLC (the Roanoke Business Hub) as a purported early termination penalty, but which,

instead, was a mechanism to extract additional monies from Authority Online for their own personal benefit.

187.     Adam and Micah additionally conspired and combined for their own personal benefit to cause Authority Online, LLC to make payments in February, March, and May, 2020 in the total amount of $16,262 to Adam's attorney, who was representing the interests of both Adam and Micah against Rocky.

188.     Adam, Micah, and Amber further conspired and combined for their own personal benefit to cause Authority Online, LLC to make payments to Amber in February, 2020 totaling $4,125, which Amber was not entitled to receive.

189.     Adam, Micah, and/or Amber undertook these actions described herein with full knowledge, intentionally, purposefully, willfully, maliciously, and without lawful justification in order to personally enrich themselves.

190.     By virtue of Adam, Micah, and/or Amber's conspiring in violation of sections 18.2-499(A) and 18.2-500 of the Virginia Code, Rocky has suffered injury to his trade, business, and profession, by reducing the amount he should have received from Authority Online LLC for his share of net profits and proceeds from the liquidation of Authority Online's assets.

191.     Rocky asks the Court to enter an award of damages pursuant to Virginia Code § 18.2-500, for actual damages, treble damages, and costs of the suit, including reasonable attorneys' fees.

### COUNT VII

**Common Law Conspiracy – As to Authority Online, LLC – Against Adam, Micah and Amber**

192.     Rocky incorporates the preceding paragraphs as if set forth fully herein.

193.    Adam, Micah, and/or Amber, by virtue of the conduct described herein, entered into a combination, association, agreement, and/or mutual understanding to accomplish, by concerted action for an unlawful purpose, the extraction of monies from Authority Online, LLC for their own personal benefit.  Such conduct caused damage to Rocky by reducing the amount he received in distributions from Authority Online, LLC for his share of net profits and proceeds from the liquidation of Authority Online's assets.

194.    Adam, Micah, and/or Amber's criminal or unlawful purpose includes, for example, the extraction of money from the Authority Online LLC for their individual benefit and to harm Rocky by reducing the value of his distribution.

195.    By virtue of Adam, Micah, and/or Amber's conduct to conspire and combine in violation of Virginia common law, Rocky has suffered injury including lost or diminished distributions from Authority Online LLC, and loss of control over business assets and property.

196.    Rocky asks the Court to enter an award of compensatory damages in an amount to be determined at trial, punitive damages in an amount not to exceed $350,000, and attorneys' fees.

## COUNT VIII

**Computer Fraud – Va. Code § 18.2-152.3 – Against Adam, ILB LLC and Amber**

197.    Rocky and RUS LLC repeat and incorporates the allegations of the preceding paragraphs as if set forth fully herein.

198.    In or about January 2020, Adam and Amber used a computer or computer network to change the login information of the ILB TV YouTube account and ILB Website account in order to block Rocky's access and to obtain for his exclusive use and control Rocky's

videos by false pretenses, and to embezzle Basketball Partnership revenues owed to Rocky, and to convert Rocky's share of the revenue and Rocky's videos.

199.    Adam and Amber's actions were "without authority" as that term is defined in Va. Code § 18.2-152.2 because they knew or reasonably should have known that they had no right, agreement, or permission to change the login information to block Rocky's access and to obtain Rocky's property because (1) they did not own ILB TV at the time, rather, Marko did; (2) Adam and Rocky were both entitled to access to ILB TV and the ILB website under the terms of the Basketball Partnership and Amber was only granted limited administrative privileges to promote the sites; and (3) Adam and Rocky jointly own the ILB Website as partners in the Basketball Partnership.

200.    By using a computer or a computer network, without authorization, and with intent to obtain Rocky's property by false pretenses, to embezzle or commit larceny, and/or to convert Rocky's property, Adam and Amber violated Va. Code § 18.2-152.3.

201.    As a result of Adam/ILB's and Amber's violations of Va. Code § 18.2-152.3, they are liable to Rocky for actual and compensatory damages, lost profits, and costs and attorneys' fees incurred in bring this lawsuit in accordance with Va. Code § 18.2-152.12.

202.    Adam/ILB and Amber's acts have caused damage to Rocky including lost and converted profits, loss of control and access to his accounts and his videos, the cost of responding to Adam/ILB and Amber's offenses, and incurring attorney's fees and legal costs in responding to and protecting against further intrusions in amounts to be proven at trial.

203.    Adam/ILB and Amber's actions were willful and malicious, and as such Rocky and RUS LLC are  entitled to punitive damages in the amount of $350,000.

204.     As a result of Adam/ILB and Amber's conduct, Rocky and RUS LLC further request that this Court issue an injunction requiring Adam and Amber to return the login credentials to those that were in place prior to Adam/ILB and Amber's unlawful actions and to prohibit Adam/ILBs and Amber from engaging in any additional acts of computer fraud against Rocky.

**COUNT IX**

**Computer Trespass – Va. Code § 18.2-152.4 – Against Adam, ILB LLC and Amber**

205.     Rocky and RUS LLC repeat and incorporates the averments contained in paragraphs 1 through 95 as though fully set forth herein.

206.     In or about January 2020, with malicious intent, Adam and Amber removed and then altered the computer password and login information belonging to the Basketball Partnership and thereby blocked Rocky's access to the ILB TV YouTube account and ILB Website account.

207.     Adam and Amber's actions were "without authority" as that term is defined in Va. Code § 18.2-152.2 because they knew or reasonably should have known that they had no right, agreement, or permission to remove and alter the account password and login information to block Rocky's access and to obtain Rocky's property because (1) they did not own ILB TV at the time, rather, Marko did; (2) Adam and Rocky were both entitled to access to ILB TV and the ILB website under the terms of the Basketball Partnership and Amber was only granted limited administrative privileges to promote the sites; and (3) Adam and Rocky jointly own the ILB Website as partners in the Basketball Partnership.

208.    By removing, halting, or otherwise disabling computer data, computer programs, or computer software from a computer or computer network, with malicious intent and without authority, Adam and Amber violated Va. Code § 18.2-152.4(A)(1).

209.    As a result of Adam and Amber's violations of Va. Code § 18.2-152.4, Adam/ILB and Amber are liable to Rocky and RUS LLC for actual and compensatory damages, lost profits, and costs and attorney fees incurred in bring this lawsuit in accordance with Va. Code § 18.2-152.12.

210.    Adam/ILB and Amber's acts have caused damage to Rocky and RUS LLC including lost and converted profits, loss of control and access to his accounts and his videos, the cost of responding to Adam/ILB and Amber's offenses, and incurring attorney's fees and costs in responding to and protecting against further intrusions in amounts to be proven at trial.

211.    Adam/ILB and Amber's actions were willful and malicious, and as such Rocky and RUS LLC are entitled to punitive damages in the amount of $350,000.

212.    As a result of Adam/ILB and Amber's conduct, Rocky and RUS LLC further requests that this Court issue an injunction requiring Adam/ILB and Amber to return the login credentials to those that were in place prior to Adam/ILB and Amber's unlawful actions and to prohibit Adam/ILB and Amber from engaging in any additional acts of computer trespass against Rocky or RUS LLC.

## COUNT X

**Declaratory Judgment Under 28 U.S.C. § 2201(a) – Against Adam and ILB LLC**

213.    Rocky repeats and incorporates the averments contained in the prior paragraphs as though fully set forth herein.

214.    Rocky seeks a declaration from this Court concerning his ownership of the ILB TV YouTube channel and www.ilovebasketballtrainig.com (the "the ILB Website") account.

215.    Marko created and owned the ILB TV YouTube account.   In September 2020, Marko conveyed all rights, title, and interest in the site to Rocky.  No other person has ever owned the site.  Nevertheless, Adam has improperly seized control of the site, blocked Rocky and Marko's access to the site, and asserted a claim of full ownership over the site.  Accordingly, there is an "actual controversy within this jurisdiction" between Rocky and Adam concerning the ownership of this account, which is now pending before this Court and ripe for determination. Adam has taken the position that he and/or ILB LLC owns ILB TV and has asserted rights antagonistic to Rocky's.

216.    The ILB Website was purchased with Basketball Partnership monies in 2015 and used by Rocky and Adam to sell the Rocky Basketball Products.  Rocky developed, created, designed, and managed the ILB Website and wrote most of the content and his name and likeness are used to this day to promote the sale of his videos on the ILB Website.  In January 2020, Adam unlawfully seized control of the site, blocked Rocky's access to the site, and asserted a claim of full ownership over the site.  Accordingly, there is an "actual controversy within this jurisdiction" between Rocky and Adam concerning the ownership of this account, which is now pending before this Court.

217.    A declaration will serve a useful purpose in clarifying and settling the legal relations at issue—that is, the question of ownership over these accounts—and will terminate and afford relief from the uncertainty, insecurity, and controversy surrounding these issues.

218.    Rocky has no adequate remedy at law.  If Adam continues his actions, Rocky will lose an important source of revenue as well as the ability to access, manage, and control the

offering of his Basketball Products to customers as well as his ability to communicate with his subscribers and others interested in his products and videos.

219. Accordingly, pursuant to Va. Code Ann. § 8.01-184 and the Federal Declaratory Judgment Act, the Court's inherent authority, and all other applicable law, Rocky seeks and is entitled to a declaration (1) that he is the owner of all rights, title, and interest in the ILB TV YouTube channel and (2) that he is the owner of a 50% interest in the ILB Website as a 50% member of the Basketball Partnership.

## COUNT IX

## COPYRIGHT INFRINGEMENT OF *PLYOVERTICAL* – Against Adam & ILB LLC

220. Rocky repeats and incorporates the averments of the averments of the preceding paragraphs as though the same were fully set forth herein.

221. Plyovertical is a work of the performing arts, subject of U.S. Registration No. PA 2,236,416, attached as Exhibit 9.

222. Plyovertical is an original work of authorship fixed in a tangible means of expression.

223. Plyovertical was completed in 2017.

224. Plyovertical continues to be offered for sale on the ILB Website. *See* Exhibits 32.

225. Rocky is the owner of all rights under 17 U.S.C. § 106(1) through 106(5) in *Plyovertical.*

226. Adam/ILB have reproduced copies of *Plyovertical* without authorization.

227. Adam/ILB have distributed copies of *Plyovertical* without authorization.

228. Adam/ILB have displayed *Plyovertical* without authorization.

229.     Adam/ILB's infringement of the copyright in *Plyovertical* has caused and will continue to cause harm to Rocky.

230.     The amount of damage sustained by Rocky has not yet been determined because Adam has removed Rocky's access to the bank accounts.

231.     Rocky seeks compensatory damages against Adam/ILB in an amount to be determined at trial, and for the Court to issue an injunction to prevent Defendants from further use, display, sale, or other infringement of his copyrighted material.

## COUNT X

## COPYRIGHT INFRINGEMENT OF *GAME TIME HANDLES* – Against Adam and ILB LLC

232.     Rocky repeats and incorporates the averments of the averments of the preceding paragraphs as though the same were fully set forth herein.

233.     *Game Time Handles* is a work of the performing arts, subject of U.S. Registration No. PA 2,238,312 (attached as Exhibit 10).

234.     *Game Time Handles* is an original work of authorship fixed in a tangible means of expression.

235.     *Game Time Handles* was completed in 2016.

236.     *Game Time Handles* continues to be offered for sale on the ILB Website.  *See* Exhibit 33.

237.     Rocky is the owner of all rights under 17 U.S.C. § 106(1) through 106(5) in *Game Time Handles.*

238.     Adam/ILB have reproduced copies of *Game Time Handles* without authorization.

239.    Adam/ILB have distributed copies of *Game Time Handles* without authorization.

240.    Adam/ILB have displayed *Game Time Handles* without authorization.

241.    Adam/ILB's infringement of the copyright in *Game Time Handles* has caused and will continue to cause harm to Rocky.

242.    The amount of damage sustained by Rocky has not yet been determined because Adam/ILB  have removed Rocky's access to the bank accounts.

243.    Rocky seeks compensatory damages against Adam/ILB in an amount to be determined at trial, and for the Court to issue an injunction to prevent them from further use, display, sale, or other infringement of his copyrighted material.

**COUNT XI**

**COPYRIGHT INFRINGEMENT OF *GUARD FOCUSED TRAINING SYSTEM* – Against**

**Adam & ILB LLC**

244.    Rocky repeats and incorporates the averments of the averments of the preceding paragraphs as though the same were fully set forth herein.

245.    *Guard Focused Training System* is a work of the performing arts, subject of U.S. Registration No. PA 2,238,321 (attached as Exhibit 11).

246.    *Guard Focused Training System* is an original work of authorship fixed in a tangible means of expression.

247.    *Guard Focused Training System* was completed in 2015.

248.    *Guard Focused Training System* continues to be offered for sale on the ILB Website.  *See* Exhibit 34.

249.    Rocky is the owner of all rights under 17 U.S.C. § 106(1) through 106(5) in *Guard Focused Training System*.

250.    Adam/ILB have reproduced copies of *Guard Focused Training System* without authorization.

251.    Adam/ILB have distributed copies of *Guard Focused Training System* without authorization.

252.    Adam/ILB have displayed *Guard Focused Training System* without authorization.

253.    Adam/ILB's infringement of the copyright in *Guard Focused Training System* has caused and will continue to cause harm to Rocky.

254.    The amount of damage sustained by Rocky has not yet been determined because Adam has removed Rocky's access to the bank accounts.

255.    Rocky seeks compensatory damages against Adam/ILB in an amount to be determined at trial, and for the Court to issue an injunction to prevent Defendants from further use, display, sale, or other infringement of his copyrighted material.

## COUNT XII

### FEDERAL UNFAIR COMPETITION - Against All Adam and ILB LLC

256.    Rocky repeats and incorporates the averments of the averments of the preceding paragraphs as though the same were fully set forth herein.

257.    Adam/ILB's use of Rocky's name, likeness, and persona in connection with the sale of products on the ILB Website is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Rocky with the ILB Website.

258.    The ILB Website falsely suggests a connection with Rocky.

259.    Rocky is not able to control the ILB Website or the use of his name, likeness, or persona thereon.

260.    Rocky's name and likeness are used in promoting the sale of *Plyovertical.  See* Exhibit 32.

261.    Rocky's name and likeness are used in promoting the sale of *Game Time Handles. See* Exhibit 33.

262.    Rocky's name and likeness are used in promoting the sale of *Guard Focused Training System.  See* Exhibit 34.

263.    The sale of Rocky's ILB Videos on the ILB Website is without Rocky's authorization.

264.    Adam/ILB's conduct constitutes unfair competition and false designation of origin in violation of 15 U.S.C. § 1025(a).

265.    Adam/ILB's  willful and wrongful conduct has proximately caused and will continue to cause Rocky damage, including substantial injury to his reputation and goodwill and diminution of the value of his business.  The harm this wrongful conduct will continue to cause Rocky is both imminent and irreparable.  The amount of damage sustained by Rocky has not yet been determined.

**COUNT XIII**

**STATUTORY RIGHT OF PUBLICITY (Va. Code § 8.01-40) – Against Adam and ILB LLC**

266.    Rocky repeats and incorporates the averments of the averments of the preceding paragraphs as though the same were fully set forth herein.

267.    Adam/ILB used Rocky's name, image, and likeness for advertising purposes on both ILB TV and the ILB Website without Rocky's authorization or written consent, in violation of Va. Code § 8.01-40(A).

268.     Adam/ILB used Rocky's name, image, and likeness for purposes of trade in order to sell products on the ILB Website without Rocky's authorization or written consent, in violation of Va. Code § 8.01-40(A).

269.     Adam/ILB's unauthorized and unlawful use of Rocky's name, image, and likeness was willful, intentional, and knowing.

270.     Rocky is entitled to compensatory, exemplary, and punitive damages pursuant to Va. Code § 8.01-40(A).

## COUNT XIV

## UNJUST ENRICHMENT – Against Adam and ILB LLC

271.     Rocky repeats and incorporates the averments of the averments of the preceding paragraphs as though the same were fully set forth herein.

272.     Rocky conferred a benefit to Adam/ILB through the use of his copyrighted works, name, images and likeness in support of Adam/ILB's sale and offering for sale of products and services.

273.     Adam/ILB knew of and accepted the benefit conferred to them by Rocky.

274.     Adam/ILB knew or should have known of their obligation to fully and fairly compensate Rocky for his contribution and the benefit conferred on them.

275.     Adam/ILB knew that the right to use Rocky's works, name, images and likeness was terminated.

276.     Despite Adam/ILB's knowledge of their obligations to Rocky and in derogation thereof, they have unjustly retained the benefit conferred by Rocky without compensation to Rocky.

277.   Adam/ILB therefore remain liable to Rocky for the full and fair value of the benefit he conferred to them.

278.   Adam/ILB's unauthorized and unlawful actions are willful, intentional, and knowing.

279.   Rocky is entitled to compensation from Adam/ILB as a result of their unjust enrichment.

### COUNT XV

### BREACH OF CONTRACT – Against Adam & ILB LLC

280.   Rocky repeats and incorporates the averments of the averments of the preceding paragraphs as though the same were fully set forth herein.

281.   As set forth above, Marko and Adam were parties to various agreements concerning the ILB TV YouTube Channel and the associated Gmail account of ibasketball6@gmail.com.

282.   Adam/ILB violated those agreements by withholding monies from Marko and by denying Marko access to the YouTube Channel and the associated Gmail Account.

283.   In September 2020, Marko assigned his rights and claims with respect to the YouTube channel and associated Gmail account to Rocky.  Rocky now stands in the shoes of Marko.

284.   Adam/ILB's breach of their agreements originally entered into with Marko has caused damages including the loss of revenues and profits and the loss of access to assets, including by not limited to the YouTube account and the associated Gmail account.

285.   Rocky requests this Court to enter an order awarding him all compensatory damages as a result of Adam/ILB's breaches, and injunctive relief requiring Adam/ILB to

relinquish all control of ILB TV back to Rocky, including but not limited to turning over all usernames and passwords and the Gmail account (including ibasketball6@gmail.com) that is used to control ILB TV.

## PRAYER FOR RELIEF

A.     That Adam/ILB, be preliminarily and permanently enjoined and restrained from infringing or otherwise reproducing ,distributing, displaying or otherwise improperly using *Plyovertical*, *Game Time Handles*, *Guard Focused Training System*, or *Perfect Player Protocol*.

B.     That Adam/ILBs acts of copyright infringement be declared willful.

C.     That Adam/ILB be preliminarily and permanently enjoined and restrained from using Rocky's name, likeness, and/or persona.

D.     That this Court award Rocky damages adequate to compensate Rocky for Adam/ILB's acts of copyright infringement and unfair competition.

E.     That Adam/ILB be required to account for any profits attributable to their infringing acts.

F.     That Rocky be awarded the greater of three times Adam/ILB's profits or three times any damages sustained by Rocky and prejudgment interest.

G.     That all copies of *Plyovertical*, *Game Time Handles*, and *Guard Focused Training System* be delivered up by Adam/ILB to Rocky.

H.     That control of ILB TV be returned to Rocky or in the alternative, that Adam/ILB be ordered to remove all videos on ILB TV displaying Rocky's image.

I.     A declaration that Rocky is the owner of ILB TV; and that control of the ILB Website be restored to Rocky, or in the alternative, that Adam/ILB be ordered to cease the sale of all of Rocky's Basketball Products.

J.     That Rocky receive all monies he is owed from ILB TV revenues since the day he was cut out by Adam/ILB.

K.     That Rocky receive all monies he is owed from the sale of his Basketball Products since the day he was cut out by Adam/ILB.

L.     That Adam be dissociated and expelled from the Basketball Partnership.

M.     That all products bearing Rocky's name or likeness in Defendants' possession, custody or control be delivered up by Defendants to Rocky.

N.     That Defendants be required to pay Rocky's costs of this action together with reasonable attorneys' fees and disbursements.

O.     That Rocky is awarded compensatory, exemplary, treble, and punitive damages pursuant to Defendants' common law and conspiracy pursuant to Va. Code § 18.2-500, and for violation of VA. Code § 8.01-40(A); and

P.     That Rocky is awarded actual and compensatory damages, punitive damages, lost profits, and costs and attorney fees incurred in bring this lawsuit in accordance with Va. Code § 18.2-152.12 and Va. Code § 18.2-152.3.

Q.     That Rocky is granted such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable in accordance with Federal

Rule of Civil Procedure 38(b).


Dated:  October 23, 2020                    Respectfully submitted,

                                            **DIMUROGINSBERG P.C.**

                                            /s/ Stacey Rose Harris

                                            Stacey Rose Harris
                                            Virginia Bar No. 65887
                                            **DIMUROGINSBERG P.C.**
                                            1101 King Street, Suite 610
                                            Alexandria, Virginia 22314
                                            Phone: (703) 684-4333
                                            Fax: (703) 548-3181
                                            Email: sharris@dimuro.com


                                            Cecil E. Key, Esq.
                                            Virginia Bar No. 41018
                                            **KEY IP LAW GROUP, PLLC**
                                            1934 Old Gallows Road, Suite 350
                                            Vienna, Virginia 22182
                                            Phone: (703) 752-6276
                                            Fax: (703) 752-6201
                                            Email: cecil@keyiplaw.com


                                            Laura A. Genovese, Esq.
                                            **K & G LAW LLC**
                                            602 S. Bethlehem Pike
                                            Bldg. B, 2nd Fl.
                                            Ambler, PA  19002
                                            Phone: 267-468-7961
                                            Email: lgenovese@kassgen.com
                                            *Admitted pro hac vice*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2020, a true and correct copy of the foregoing was

electronically filed with the Court using the CM/ECF system.


*/s/ Stacey Rose Harris*
Stacey Rose Harris